### WITTERS v. SOWLES et al.

*(Circuit Court, D. Vermont. January 14, 1888.)*

BANKS AND BANKING—SPECIAL DEPOSIT—WHEN TITLE PASSES.

An insolvent was cashier of a bank, to which he was largely indebted, and put certain of his own securities in a package, and placed it with similar bundles left with the bank as special deposits for safe-keeping. It was insolvent's intention in this manner to pay certain drafts securing his indebtedness to the bank, and these drafts were entered on the books as paid, and the item of bonds of the bank was increased to the extent of the value of these securities. The securities were not indorsed by insolvent, and the other officers of the bank had no knowledge of the transactions. *Held,* that no property in the securities was transferred to the bank.

In Equity.

For statement of facts of this case, see *Witters v. Sowles,* 32 Fed. Rep. 762.

*Chester W. Witters* and *Albert P. Cross,* for orator.

*Willard Farrington* and *William D. Wilson,* for defendants.

WHEELER, J. This cause has now been heard upon testimony taken since the former hearing and decision. 32 Fed. Rep. 762, 765. The new evidence as to the filing of the petition in insolvency is disposed of as in the other case, involving the same question, between these parties. It now appears from all the evidence that the securities in question, which were ordinary notes and mortgages, were taken by the defendant Sowles, the insolvent, from among his own papers, and put, with the drafts taken from among the bills receivable of the bank of which he was cashier, into an envelope, and the package was put into a bundle of similar packages left as special deposits with the bank for safe-keeping, without the knowledge of any of the officers or employes of the bank; and the drafts were entered on the books of the bank as if paid, which lessened his apparent indebtedness to the bank their amount, $10,000, and the item of bonds on the books of the bank was increased the same amount. This increase referred, in his mind, to this package containing these securities, which amounted to about $9,800, and the drafts. When the receiver took possession of the bank, he employed a person who had been engaged about the bank, and was familiar with its vault and safes and assets, to make an inventory of its assets. This package was not so situated as to appear to him or the receiver to belong to the bank, and he did not include its contents in the inventory. Afterwards they were

informed by the insolvent that they were intended to belong to the bank, and were put into a supplemental inventory.

If what was done about them in the first place transferred the property in them to the bank, the orator is entitled to hold them against the defendants the assignees; if not, the insolvency, and knowledge of it, of the insolvent, became so imminent, and the proceedings in insolvency against him so progressed, before their situation was changed, that the assignees are entitled to them. The intention of the insolvent and cashier to have them become the property of the bank to pay or secure the drafts, without attracting the attention of the other officers of the bank, is fully apparent; the question is whether what was done was sufficient to carry out the intention, and transfer the property in them. He was acting alone, and on both sides of the transaction, so that there was no one to bind the delivery by acceptance. The drafts were not affected by what was done, as valid instruments, but remained in force as before. The bank, in effect, parted with nothing for these securities by anything that would bind it. The other officers or the receiver, when the transaction was discovered, could have repudiated it, and stood upon the drafts as before. Had he used money, and placed it among the current funds of the bank, to go along in their volume, the money would seem unquestionably to become the money of the bank; but if he put that somewhere else within his own exclusive knowledge and control, and only intending that it should become the property of the bank, seemingly, it would not. These securities were not indorsed by him, but were merely placed among these special deposits. Neither the bank nor any of its officers had any right to overhaul or examine the contents of these special deposits. *Foster* v. *Bank*, 17 Mass. 479. If this package was the insolvent's own, he would have the right to examine it as owner, and to do whatever else he pleased with it; and the other officers would have no right to it to do anything with it at all. It was apparently his, and within his control, and without theirs. It was situated as if it was his special deposit; and the securities had not gone into the current of the bank's assets. He alone could not transfer them from his property to the bank's without distinguishing them from his own property as that of the bank.

As the case stands now, upon the facts shown, turning upon that transaction, had by him alone, at that point of time, it does not appear that enough was then done to carry out his intention to transfer the securities to the bank. The entries on the books merely show, in part, his intention; they did not affect the custody or control of the securities themselves. This is a matter of strict right between the assignees, representing the interests of one set of creditors, and the receiver, representing those of another set; and, as the case is made to appear in the light of the new evidence, the right to these securities falls on the side of the assignees. Some of them appear to have been converted into money, and that and the others are in this receiver's hands. This money, and the securities not converted, must be decreed to the assignees. As the amount of the money does not appear, an account of it must be taken. The

question of terms upon which the case was opened for new evidence was left to this hearing. It seems just that the defendants should take no costs other than such as may be necessary on the accounting, and that the orator's costs to the reopening of the case should be deducted from those, or from the money in his hands.

Let a decree be entered that an account be taken of the money collected upon these securities; and that the amount thereof, when ascertained, belongs, with the remainder of the securities and the Swanton Bank stock and Wright contract before decreed, to the defendants the assignees, to be paid and delivered by the orator to them, deducting his costs to the reopening of the case, and with necessary costs of the accounting to the defendants.